The opinion of the court was delivered by
Nicholls, C. J.
On the 3d of November, 1890, the defendant leased to the plaintiffs for a period of eleven months, commencing *1169 on the 1st of November, 1890, certain property in the city of New Orleans for the sum of twenty-two hundred dollars^ payable in monthly instalments of two hundred dollars each, represented by promissory notes of the lessees, endorsed by Paul Oonrad.
The lessees took possession of the building, but after occupying it for a short time left the same and instituted the present suit for a dissolution of the lease, and claiming eight hundred dollars as actual and ten thousand dollars as exemplary and punitive damages against the defendant.
Defendant resists the demand, and admitting that plaintiffs have paid the first month’s rent reconvenes, praying for a judgment for two thousand dollars as still due under said lease and on said notes against the plaintiff and Paul Oonrad, who on their prayer was made a party to the suit. The case was tried by a jury, which returned a verdict in favor of the plaintiffs for the sum of one hundred dollars, and also in their favor on defendant’s reconventional demand. Defendant appealed.
Plaintiffs allege that about the 1st of November, 1890, they formed a copartnership with the object and purpose of carrying on the business of warehousemen; that they required for said business a suitable building; that they found what they considered a suitable location for conducting it, not having before engaged in that business, at Nos. 59 and 61 Decatur street, the property of the defendant; that they called on him and were by him informed that the house and premises were particularly fitted, eminently proper and thoroughly safe for said business; that the building was so strongly constructed that it could bear all the weight of all the goods of any character whatever that could be stored there; that under such a statement and owing to the safe appearance of the house, it being lately built, they rented the same and commenced business, after fitting up the establishment with furniture and tools and elevator at considerable cost.
They aver that the building and premises were wholly unfit and dangerous for the purpose and business for which they were rented to them by the defendant, and that he well knew that it was unsafe, unsound and unfit both in foundation and superstructure for the business, and he falsely and purposely misrepresented the facts, misleading them into the belief that the premises were in every respect adapted and perfect for the said business of a warehouse for sugar *1170 and molasses, and thus by fraud and bad faith on the part of defendant they were prevailed upon to enter into said contract of lease.
That they began business under the most favorable auspices and with the brightest prospect of success.
That after they had received nine hundred sacks of rice, one hundred and nineteen hogsheads of sugar, one thousand four hundred and fifty barrels of sugar- and one thousand one hundred and fifty barrels of molasses, weighing altogether about one million five hundred and fifteen thousand two hundred and fifty pounds, over one-half of which was stored on the basement floor, they were suddenly forced to stop receiving and storing goods because the building proved unable to support the said weight and began to sink aDd give way, and it became at once apparent that it was unfit and useless for a warehouse; that in the meantime they were obliged to refuse offers from various parties to store sugar and molasses, more than sufficient to fill the premises, because of the defective and dangerous condition of the building.
That it got out of level, and its foundations gave way owing to the defective condition and construction of the same, and they were obliged to discontinue their business altogether; that notwithstanding efforts on their part they were unable to find a ay other building convenient and suitable for their business, and through the malicious and false representations of the defendant they were deprived of the means of conducting a business which would have been very lucrative and would have yielded them during the term of the lease, including the term for which renewal had been stipulated therein, at least ten thousand dollars net.
That they notified defendant without delay that they considered the lease null and void by reason of said defects and unfitness, and that they would vacate the premises and hold him for damages; that they had complied with all their obligations under the lease, having paid the first month’s rent, which they were entitled to recover; that by reason of the sinking of the building they were compelled to notify all the owners or their agents of the goods stored with them to remove the same, and they had refused to pay the storage due at the time on the same, which amount, as well as the labor therein, they were entitled also to recover.
Answering the charges made in the petition, defendant, after denying generally all plaintiff’s allegations, says that the premises *1171 rented were not improper, unfit, unsafe or unsound; that they were examined by the plaintiffs before the lease was entered into, and if any damage or inconvenience was caused plaintiffs it was because of their own reckless, negligent and improper use of the premises.
That through some unforeseen event some of the posts holding up a part of the building sank a few inches, but the flooring did not fall in or give way; that immediately upon being notified of the fact they had the proper repairs made with as little inconvenience as possible to the plantiffs and all were done and completed inside of eight days. That he offered to allow a rebate in the rent for the time and space occupied while the repairs were going on, but plaintiffs refused to consider the question and claimed excessive damages.
The questions we have to decide are, first, whether the plaintiffs having leased the premises described in the petition and taken possession of the same were justified in subsequently vacating the building under the circumstances disclosed in the record, repudiating the contract and claiming damages from defendant, or whether the latter be entitled to rent, and if so, to how much rent.
The plaintiffs maintain (and the testimony of Dean and Ker sustain the contention) that prior to leasing the property several interviews took place between the parties at which the lessor was advised of the business upon which plaintiffs were about to enter, the uses of the building which they sought to lease and the character of the building needed for that purpose; that the defendant represented to them that his building would meet the necessities of the case and was what they needed; that they entered into the contract of lease relying upon the correctness of these representations, which subsequent events showed to be untrue. The defendant denies that any such representations were made, but his own testimony is not as positive or emphatic and direct as it should have been. The reference made by him prior to the lease of the storing capacity of the Kelly building, which he evidently admitted very reluctantly on cross - examination, indicates that the subject matter of the capacity and strength of his own building was under discussion and this reference was made clearly in incidental support of the merits of his own building. Defendant’s answer contains a declaration that he rented the “ warehouse ” to the plaintiffs, and this allegation sustains plaintiffs in their position as to the knowledge of the defendant of the contemplated use of the building and its lease as a warehouse. *1172 Plaintiffs took possession of the premises about the 10th of November and immediately commenced business as warehousemen for sugar, molasses and rice. The building was at no time completely filled. The precise distribution of what they did have on hand on the 10th of December is shown neither by plaintiffs nor defendant; sugar and molasses are said to have been stored in some places two tiers high, and in others three, but the exact place where this was is not disclosed. The building is a long one with nine supporting posts distributed lengthwise through the centre and resting on brick foundations of uniform size and character.
On the morning of the 10th of December the three back posts were observed to have settled considerably, bringing down correspondingly, the flooring with them and the portion of the roof over them. Plaintiffs at once notified the defendant of the situation. Workmen were immediately sent to the. buildi ig, under direction of an architect, who “ prized up ” and took out the flooring near these posts, as well as the posts themselves. The foundations on which these three posts rested were taken out and made deeper and broader. A portion of the wall, which had “bulged” somewhat, from the sinking of the posts, was straightened; the posts were replaced and the roof raised to its original position. Only eight or nine days were consumed in this work, but plaintiffs had made up their mind to throw up the lease and vacate the premises. Owners of the property on storage were called on to withdraw the same, and as soon as this was done plaintiffs left the premises, after notifying the defendant and tendering him the keys of the establishment. Defendant refusing to receive the keys, they were left at a corner store subject to his orders. We may here say that after some delay defendant took the keys, and in July occupied a portion of the building for his own purposes. We may also say here that in the meantime the defendant unsuccessfully attempted to lease the building for account of the plaintiffs.
Considerable testimony was taken in the lower court as to the weight a building should be able to bear per square foot in order to be held and considered a building proper and suitable for warehouse purposes, and as to whether the particular house leased to plaintiffs came up to the required standard. As might be expected there was a difference of opinion on that subject. The jury adopted the views *1173 of the plaintiffs’ witnesses on both points, and we can not say they erred.
It is very certain that defendant, when he sent his workmen to the building after the sinking spoken of, caused the foundations on which the posts rested to be made very considerably deeper and broader, thereby recognizing the necessity for a change. This change was not confined to the particular post under which it is claimed a soft spot, up to that time unknown (occasioned by the existence there at a former time of a well), was discovered, but extended to all three of the posts at the back end of the building. There was some claim that plaintiffs hacl overloaded the building, but the answer ascribes the sinking, not to this, but to an ‘‘unforeseen event,” which defendant’s testimony points out as the “soft spot” just mentioned. Even if the building was overloaded beyond its actual bearing capacity, there is nothing to show that it would have been overloaded had that capacity been up to standard requirements.
Defendant' claims that the work called for by the sinking of the posts was in the nature of repairs and not reconstruction; that plaintiffs were put to no serious inconvenience, as they were not forced to leave the house; that the repairs worked an interruption (such as it was) of plaintiffs’ business for only eight or nine days; that the building, except at the particular place where the sinking took place, was stanch and strong, and that the partial trouble gave no right to a dissolution of the lease, but at best to a reduction of rent. He relies particularly upon Art. 2700 of the Civil Code. The work done in this case was work which was necessary to have been done prior to the lease in order to have placed the building in the condition in which it should have been, to fulfil defendant’s warranty that it was fit and appropriate for the known use to which it was to be applied. This warranty is indivisible. Caffin vs. Redon, 6 An. 488. The work itself was a betterment, not mere repairs, and could only be done during the lease, subject to plaintiffs’ legal rights in the premises. The rules referred to by the defendant are not applicable under the conditions of this case. Defendant contends that plaintiffs inspected the building themselves prior to contracting and recognized in the act of lease it was in good condition.
The building was a new one — the condition referred to was the outward apparent condition. ' The foundation under the posts which gave way or sunk were hidden from view. It is claimed that *1174 the real motive of the plaintiffs in asking a dissolution of the lease is to be found in the failure of their business venture independently of the building. That may well be, but if the circumstances of the case justified an abandonment of the premises, their motives in exercising the legal right do not affect the situation.
We think the jury erred in condemning the defendant to pay plaintiffs one hundred dollars. If plaintiffs have suffered any damage in this matter the proximate cause thereof is not due to the defendant. For the reasons herein assigned, it is ordered, adjudged and decreed that so much of the verdict of the jury as condemns the defendant to pay the plaintiffs one hundred dollars, and the judgment of the court below based on said portion of the verdict, be and the same is hereby annulled, avoided and reversed; the verdict and judgment otherwise are hereby affirmed. Defendant to pay the costs of the lower court, plaintiffs and appellees to pay costs of appeal.